| | |
|---|---|
| ESTELLE COMPTON, ) | |
| and CANTRELL COMPTON, ) | |
| ) | |
| Plaintiffs, ) | Case No.: 3:07-0869 |
| ) | Judge Trauger |
| v. ) | |
| ) | |
| WAL-MART STORES, EAST, LP, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

Before the court is a Motion for Summary Judgment filed by the defendant (Docket No. 16), to which the plaintiffs have responded (Docket No. 20), and the defendant has replied (Docket No. 22). For the reasons discussed herein, the defendant's motion will be granted.

## BACKGROUND

This case arises out of injuries sustained by the plaintiffs when Estelle Compton slipped and fell at defendant's retail store in Murfreesboro, Tennessee.[1] (Docket No. 1-2 ¶ 6.) On the morning of February 22, 2007, after grocery shopping for approximately one hour, Mrs. Compton and her husband, Cantrell Compton, were preparing to leave the store when they decided to pick up frozen potatoes. (Docket No. 16-1 at 64, 86.) As Mrs. Compton walked up one of the store's frozen food aisles ("Aisle Two") to retrieve the potatoes, she slipped and fell to the ground. (*Id.* at 64.) After a fellow customer helped her up, Mrs. Compton saw a box that was

---

[1] Unless otherwise noted, all facts are drawn from Defendant's Responses to Plaintiffs' Concise Statement of Additional Facts as to Which There Is No Issue. (Docket No. 24.)

1

"tore all to pieces" on the floor in the area where she fell.[2] (*Id.* at 87, 100.) Mrs. Compton then walked over to Mr. Compton, who had waited with the couple's shopping cart near the front of Aisle Two, and told him of her accident. (*Id.* at 71, 100-01.) Mr. Compton then walked down Aisle Two himself and observed frozen broccoli and melted cheese sauce on the floor where Mrs. Compton had fallen.[3] (Docket No. 16-2 at 28-29.)

In Wal-Mart's frozen foods section, broccoli and cheese products are located toward the end of Aisle Two, in the same area where Mrs. Compton fell. The particular broccoli and cheese product that allegedly caused Mrs. Compton's fall consisted of multiple individual servings of frozen broccoli and cheese sauce, which were packaged in black plastic containers, each of which was covered by a cellophane top. A cardboard box enclosed the individual containers, which were sold as a single unit. After the Comptons reported the accident to customer service, several Wal-Mart employees came to the scene, including Matthew Renegar, an Asset Protection Coordinator. Renegar observed that the cellophane top of one of the individual broccoli and cheese containers was open and that a large chunk of yellow cheese was on the floor, surrounded by scattered broccoli pieces. (Docket No. 16-4 at 23.) Ryan Blake, another Asset Protection Coordinator who also came to the scene, similarly observed that the cellophane top of one of the

---

[2]Mrs. Compton's deposition testimony is unclear as to whether she observed melted cheese sauce on the floor at the time of her fall. At one point in her deposition, Mrs. Compton testified that, immediately after her fall, she noticed that she had slipped "on that slippery sauce." (Docket No. 16-1 at 63-64, 87.) However, in the same deposition, Mrs. Compton also testified that, immediately after her fall, she only noticed the scattered box on the floor and that she did not know what caused her fall until a Wal-Mart employee informed her after she reported the accident. (Docket No. 16-1 at 100-01.)

[3]According to Mr. Compton, the cheese sauce looked like it had "melted enough to run out on to the floor." (Docket No. 16-2 at 29.) Mr. Compton did not touch the cheese. (*Id.* at 35.)

2

individual containers was pulled back, the outer cardboard box was missing, and broccoli was scattered on the floor. Blake assisted Mrs. Compton in preparing a customer statement describing the accident.[4] (Docket No. 20-10 at 16-17, Ex. 1.) Blake also prepared an accident report, noting that, due to "melting ice," the floor of Aisle Two was not dry in the area where Mrs. Compton fell.[5] (Docket No. 20 at 25, Ex. 3.) Photographs of the accident scene were also taken.[6] Jean Wade, a Wal-Mart maintenance employee, then cleaned up the spill.

According to Wal-Mart, at the time of Mrs. Compton's accident, it had a policy to inspect its floors and aisles during safety sweeps every two hours. Additionally, Wal-Mart trained its employees to examine the aisles in their work area for debris periodically and to attend to any potential hazards. However, Wal-Mart does not keep records of its safety sweeps and other examinations.

## ANALYSIS

The plaintiffs brought this negligence claim against Wal-Mart in the Circuit Court of Rutherford County, Tennessee. (Docket No. 1-2.) Wal-Mart removed the action on the basis of

---

[4] In her customer statement, Mrs. Compton stated that she "slipped on frozen [broccoli] and cheese on floor, fell forward and landed mostly on right arm and shoulder." (Docket No. 20 Ex 10-1.) The document estimates that the accident took place at approximately 9:35 a.m.

[5] Although the accident report also confirmed that broccoli and cheese were on the floor at the time Mrs. Compton slipped, it did not refer to any melting cheese sauce. (*See* Docket No. 20-10 Ex. 3.) In her deposition, Blake testified that she only observed bits of ice that had melted around the container, which she attributed to the scattered broccoli. (Docket No. 20-10 at 26-27.)

[6] The Comptons acknowledge that these photos are accurate representations of the accident scene. (Docket No. 16-1 at 99; Docket No. 16-2 at 33-34.) However, the parties dispute the extent to which the photos show melted cheese sauce. While Wal-Mart argues that the photos show that the cheese sauce remained frozen in a block (Docket No. 22 at 4), Mr. Compton testified that at least one of the photos shows that the cheese sauce had melted out of the container (Docket No. 16-2 at 34; Docket No. 16-7). The photos in the record are of such poor quality that the court is unable to draw any conclusions from them. (*See* Docket No. 16-7.)

3

diversity of citizenship. (Docket No. 1.) After discovery, Wal-Mart moved for summary judgment. (Docket No. 16.)

**I. Summary Judgment Standard**

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). To prevail, the moving party must meet the burden of proving the absence of a genuine issue of material fact as to an essential element of the opposing party's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001).

In determining whether the moving party has met its burden, the court must view the factual evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). "The court's function is not to weigh the evidence and determine the truth of the matters asserted, 'but to determine whether there is a genuine issue for trial.'" *Little Caesar Enters., Inc. v. OPPCO, LLC*, 219 F.3d 547, 551 (6th Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

If the nonmoving party fails to make a sufficient showing on an essential element of the case with respect to which she has the burden, however, the moving party is entitled to summary judgment as a matter of law. *See Williams v. Ford Motor Co.*, 187 F.3d 533, 537-38 (6th Cir. 1999). To preclude summary judgment, the nonmoving party "must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." *Chao v.*

4

*Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Shah v. Racetrac Petroleum Co.*, 338 F.3d 557, 566 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 252). If the evidence offered by the nonmoving party is "merely colorable," or "not significantly probative," or not enough to lead a fair-minded jury to find for the nonmoving party, the motion for summary judgment should be granted. *Anderson*, 477 U.S. at 249-52. "A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Hill v. White*, 190 F.3d 427, 430 (6th Cir. 1999) (citing *Anderson*, 477 U.S. at 247-49).

**II. Negligence**

To establish a negligence claim, a plaintiff must prove: (1) a duty of care owed by the defendant to the plaintiff, (2) conduct by the defendant falling below the standard of care that amounts to a breach of that duty, (3) injury or loss, (4) causation in fact, and (5) proximate causation. *Coln v. City of Savannah, Tenn.*, 966 S.W.2d 34, 39 (Tenn. 1998), *overruled on other grounds by Cross v. City of Memphis*, 20 S.W.3d 642 (Tenn. 2000). In the instant case, Wal-Mart contends that summary judgment is appropriate because the Comptons have failed to establish the duty element. (Docket No. 17 at 13.)

Whether a defendant owes a plaintiff a duty is a question of law that "requires consideration of whether such a relation exists between the parties that the community will impose a legal obligation upon one for the benefit of others—or, more simply, whether the interest of the plaintiff which has suffered invasion was entitled to legal protection at the hands of the defendant." *Coln*, 966 S.W.2d at 39 (quotation and citation omitted). Duty is a legal

5

obligation that a defendant owes to a plaintiff "to conform to a reasonable person standard of care for protection against unreasonable risks of harm." *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995). "A risk is unreasonable and gives rise to a duty to act with due care if the foreseeable probability and gravity of harm posed by defendant's conduct outweigh the burden upon defendant to engage in alternative conduct that would have prevented the harm." *Id.* (citing Restatement (Second) of Torts § 291 (1964)).

An owner or occupier of business premises has a duty to exercise reasonable care to protect its guests, including "the responsibility to remove or warn against latent or hidden dangerous conditions on the premises of which one was aware or should have been aware through the exercise of reasonable diligence." *Rice v. Sabir*, 979 S.W.2d 305, 308 (Tenn. 1998). This duty exists even if a dangerous condition is "open and obvious." *Id.* This duty does not, however, require an owner or occupier to remove or warn guests against "conditions from which no reasonable risk was to be anticipated, or from those which the occupier neither knew nor could have discovered with reasonable care." *Id.* at 309; *see also Hardesty v. Serv. Merch. Co.*, 953 S.W.2d 678, 681 (Tenn. Ct. App. 1997) ("A merchant is not an insurer of the safety of its customers, and it is not to be presumed that the proprietor of a store . . . is instantly aware of all that transpires within its establishment."). Rather, an owner or occupier of business premises has a duty to remove or warn against a dangerous condition only if it created the condition, had actual knowledge of the condition, or had constructive knowledge of the condition. *Blair v. West Town Mall*, 130 S.W.3d 761, 764 (Tenn. 2004). Here, the Comptons do not contend that Wal-Mart created or actually knew that the broccoli and cheese was on the floor of Aisle Two. (Docket No. 21 at 6). Therefore, the determinative question is whether Wal-Mart had

6

constructive notice of the presence of broccoli and cheese on the floor of Aisle Two prior to the accident.

Generally, a plaintiff establishes constructive notice by showing that a particular dangerous condition existed for such a length of time prior to the accident that the premises owner or occupier should have become aware of its existence. *Blair*, 130 S.W.3d at 764. Alternatively, a plaintiff may establish constructive notice "by showing a pattern of conduct, a recurring incident, or a general or continuing condition indicating the dangerous condition's existence." *Id.* In the instant case, Wal-Mart argues that summary judgment is appropriate because the Comptons have established neither the length of time that the broccoli and cheese was on the floor of Aisle Two nor the existence of a general or continuing condition of similar spills. (Docket No. 22.) The Comptons argue that summary judgment is not warranted, as there is sufficient evidence for a reasonable jury to conclude that Wal-Mart had constructive notice under either test. (Docket No. 21.)

The court turns first to the Comptons' argument that the broccoli and cheese was on the floor of Aisle Two for a sufficient length of time to create a genuine issue as to constructive notice. A plaintiff bears the burden to "submit proof as to how long the allegedly dangerous condition existed prior to the accident." *Hardesty*, 953 S.W.2d at 683. As a general rule, a plaintiff cannot establish constructive notice without some showing as to the length of time that a condition has persisted. *See Self v. Wal-Mart Stores, Inc.*, 885 F.2d 336, 338 (6th Cir. 1989); *Hardesty*, 953 S.W.2d at 683. Where no proof exists as to when and how a dangerous condition was created, summary judgment is appropriate, as "it would be improper to permit the jury to speculate on these vital elements." *Chambliss v. Shoney's Inc.*, 742 S.W.2d 271, 273 (Tenn. Ct.

App. 1987).

The Sixth Circuit's decision in *Self* illustrates these principles. In that case, a customer slipped and fell on loose dog food on the floor of a retail store. *Self*, 885 F.2d at 337. In affirming the district court's grant of summary judgment in favor of the store, the Sixth Circuit emphasized the customer's lack of proof as to the length of time that the dog food had been on the floor prior to the accident:

> The defendant's store was generally clean, and the deposition testimony of the plaintiff and his wife showed conclusively that they had no way of telling how much time had elapsed between the point at which the dog food was spilled and the point at which Mr. Self lost his footing on it. For all a jury could know . . . the dog food might have been spilled only 30 seconds before the fall—and it is not to be presumed, under Tennessee law, that the proprietor of a self-service department store is an omniscient omnipresence, instantly aware of everything that transpires anywhere in the store.

*Id.* at 339.

In another case, a shopper brought suit after she slipped and fell on spilled baby food in a retail store. *Hampton v. Wal-Mart Stores, Inc.*, No. E2004-00401-COA-R3-CV, 2004 WL 2492283, at *3 (Tenn. Ct. App. Nov. 4, 2004). In affirming a directed verdict for the store, the court explained that, because the customer "presented no evidence regarding how long it would have taken the baby food to assume a 'skimmed over' appearance," the customer's testimony that the baby food was "skimmed over" at the time of her fall was insufficient to establish the length of time that it had been on the store's floor prior to the accident. *Id*. Because "a jury considering this evidence could do no more than guess, conjecture or speculate as to its import with respect to the question of the extent of time the baby food had been on the floor," the court held that no reasonable jury could conclude that the retailer had constructive notice. *Id.*

In a third case, a shopper brought a negligence claim after she slipped and fell on

8

standing water in a retail store's sporting goods department. *Bowling v. Wal-Mart Stores, Inc.*, 233 Fed. Appx. 460, 468 (6th Cir. 2007). To support her argument that the store had constructive notice of the condition, the plaintiff relied on the size of the puddle, which was two to three feet wide, to indicate the length of time that it existed prior to her fall. *Id.* In affirming the district court's grant of summary judgment, however, the Sixth Circuit concluded that the size of the puddle did not indicate how long the puddle had existed, nor how long the roof leak that caused the puddle had existed. *Id.* Because "the puddle could have been created over the period of ten hours or ten seconds," the court held that the plaintiff failed to introduce evidence to support a finding of constructive notice. *Id.*

Here, the Comptons concede that they do not know how long the broccoli and cheese was on the floor of Aisle Two. (Docket No. 20-1 ¶ 1.) Like the plaintiffs in *Self*, *Hampton*, and *Bowling*, the Comptons rely on circumstantial evidence, placing particular emphasis on the fact that they observed that the cheese sauce had melted out of the container and onto the floor.[7] Based on this fact, the Comptons contend that a reasonable jury could conclude that the broccoli and cheese was on the floor of Aisle Two long enough to establish that Wal-Mart had

---

[7]The parties dispute whether the cheese sauce had actually melted or remained frozen. Both Mr. and Mrs. Compton testified that they saw melted cheese sauce shortly after the accident. *See supra* notes 2-3. However, none of Wal-Mart's employees who observed the scene stated that they saw any melted cheese sauce. Blake only observed bits of melted ice, rather than melted cheese sauce. *See supra* note 5. Wade stated that she observed a "lump sum" of cheese, but she did not comment on whether the cheese was melted. (Docket No. 16-3 at 14.) Renegar stated that "everything was still frozen solid" and that there was no melted cheese. (Docket No. 16-3 at 35.) Furthermore, photographs of the accident scene do not clearly illustrate whether the cheese sauce had melted. *See supra* note 6. Therefore, based on this evidence, a reasonable jury could reach either conclusion, and the question of whether the cheese was melted is a factual one beyond the scope of the court's inquiry. However, as will be discussed *infra*, this fact is not material.

9

constructive notice of the condition.[8]

Despite the Comptons' argument to the contrary, no evidence in the record would support a finding that Wal-Mart had constructive notice of the broccoli and cheese spill on the floor of Aisle Two. First, although the question of when the spill occurred is a factual one, Wal-Mart has introduced evidence that supports a finding that the spill occurred only minutes prior to the accident. In particular, Adam Braeback, Wal-Mart's frozen foods manager, testified that, approximately five minutes before he learned of Mrs. Compton's accident, he looked down Aisle Two and saw nothing on the floor.[9] (Docket No. 20-4 at 39-40; Docket No. 22-4.) Second, even assuming *arguendo* that the cheese sauce was melted at the time of Mrs. Compton's fall, this fact alone does not establish the length of time that the broccoli and cheese was on the floor prior to the accident. Like the *Hampton* plaintiff, who relied on the baby food's "skimmed over" appearance but did not provide any additional evidence as to the length of time needed for baby food to skim over, the Comptons simply rely on the fact that the cheese sauce had melted out of

---

[8]The Comptons also note that the outer cardboard box that enclosed the individual containers of broccoli and cheese could not be located, asserting the box's absence is further evidence of the length of time that the broccoli and cheese was on the floor of Aisle Two. (Docket No. 21 at 11.) However, as will be discussed *infra* with regard to the melting cheese sauce, even with this evidence, a jury could only speculate as to how long the broccoli and cheese was on the floor prior to the accident. *See Hampton*, 2004 WL 2492283, at *3.

[9]The Comptons contend that a genuine issue of fact exists as to the timing and outcome of Adam Braeback's inspection of Aisle Two. (Docket No. 21 at 14-15.) Braeback originally testified that he looked down Aisle Two just before clocking out at approximately 9 a.m. (Docket No. 20-4 at 39-40.) Braeback further testified that, within five minutes of clocking out, he learned of Mrs. Compton's accident. (*Id.*) At the time of his deposition, Braeback could not resolve the discrepancy between these statements and Mrs. Compton's customer statement, which noted that the accident occurred at approximately 9:35 a.m. (*Id.* at 45-46; Docket No. 20-10 at 16-17, Ex. 1.) However, after Braeback consulted his time sheet and realized that he actually had clocked out at 9:42 a.m., Braeback submitted an errata sheet to correct his deposition testimony. (Docket No. 22-4.) In their response, the Comptons overlook Braeback's corrected testimony, which resolves the original discrepancy. (*See* Docket No. 20-3.)

10

its container, providing no additional evidence, such as expert testimony, that could establish the time required for cheese sauce to melt. The Comptons attempt to distinguish *Hampton* by asserting that common knowledge dictates that frozen cheese sauce requires "an extended period of time" to melt and that no such common knowledge exists with regard to the amount of time needed for baby food to skim over. (Docket No. 21 at 14.) This distinction is unpersuasive, however, as it is not a matter of common knowledge as to how long it would have taken the cheese sauce from this particular product to melt in this particular location.[10] Additionally, "an extended period of time" is inherently imprecise, and a jury could still "do no more than guess, conjecture or speculate" as to how long the broccoli and cheese remained on the floor of Aisle Two prior to the accident, even if it were a matter of common knowledge, as the Comptons assert. *See Hampton*, 2004 WL 2492283, at *3. Without providing proof to establish the length of time it would have taken for the cheese sauce to melt in this location, the Comptons cannot escape the logic of *Hampton*.

Additionally, the Comptons' reliance on *Simmons v. Sears, Roebuck & Co.*, 713 S.W.2d 640 (Tenn. 1986), is misplaced. (Docket No. 21 at 6-7, 10.) In that case, a customer introduced evidence that a retailer had no policy to systematically clean the stairs on which he fell and that the debris that caused his fall "had been trampled on repeatedly prior to plaintiff's fall." *Id.* at 642. In addition, another customer testified that he had observed several of the retailer's employees passing through the area of the plaintiff's fall fifteen minutes prior to the plaintiff's fall and that "'the debris, the peanuts, the popcorn bags, the cups' were obvious to those

---

[10] Of course, the temperature of the floor, about which no proof has been introduced, would also have an important bearing upon how quickly something frozen would melt. And, commonly, floors near refrigerators in a residence or commercial establishment are often warm, presumably because of the continuous running of the cooling unit.

11

employees." *Id.* at 641. The court held that a reasonable jury could conclude that the store had constructive notice of the debris. In the instant case, there were no footprints, track marks, or other evidence to suggest that customers had traipsed through the broccoli and cheese prior to Mrs. Compton's fall (Docket No. 16-1 at 103; Docket No. 16-2 at 34), nor is there any disinterested third-party testimony as there was in *Simmons*. Unlike the customer in *Simmons*, who introduced evidence that the debris had been trampled on repeatedly and that it may have existed at least fifteen minutes prior to the accident, the Comptons have introduced no evidence that would allow a jury to do anything other than speculate as to the length of time that the broccoli and cheese was on the floor prior to Mrs. Compton's fall.

The Comptons' reliance on language from *Allison v. Blount National Bank*, 390 S.W.2d 716, 716-18 (Tenn. Ct. App. 1965), stating that "it is generally for the jury to say whether the condition causing the injury to a store customer had existed long enough that a reasonable man exercising reasonable care would have discovered it," is also misplaced. (Docket No. 21 at 4-5.) In *Allison*, the plaintiff introduced evidence to establish that the floor on which she slipped had been wet for approximately an hour prior to her accident, relying on the facts that it had rained intermittently during the morning and that the rain had ceased approximately an hour prior to her fall. *Id.* at 716-18. According to the court, these facts gave rise to an inference that other customers had tracked in the water during the morning and "that the water condition did not come about as of the moment of plaintiff's fall or even minutes before, but had continued throughout the morning—that this was sufficient to charge the defendant with constructive notice of a condition endangering the safety of its customers." *Id.* at 719. Therefore, despite its expansive language, *Allison*'s holding is based on the significant evidence introduced by the

12

plaintiff relating to the duration of the water condition, which greatly contrasts the lack of evidence introduced by the Comptons related to the duration of the broccoli and cheese spill. At the summary judgment stage, a plaintiff "must present sufficient evidence as to how long the condition existed on the defendant's premises to create a genuine issue of material fact on the question of constructive notice." *See Jones v. HCA Health Servs.*, No.M1998-00490-COA-R3-CV, 1999 Tenn. App. LEXIS 827, at *4 (Tenn. Ct. App. Dec. 17, 1999). Where a plaintiff lacks proof as to how long the dangerous condition existed on the premises prior to the accident, a jury should not be allowed to speculate. *See id.* (citing *Chambliss*, 742 S.W.2d at 273). For the foregoing reasons, no reasonable jury could conclude that Wal-Mart had constructive notice based on the length of time that the broccoli and cheese spill existed prior to the accident.

Having rejected the Comptons' argument that Wal-Mart had constructive notice based on the length of time the broccoli and cheese was on the floor of Aisle Two, the court turns to the argument that Wal-Mart had constructive notice based on the existence of a general or continuing condition. As the Tennessee Supreme Court explained in *Blair*, a plaintiff may establish constructive notice "by showing a pattern of conduct, a recurring incident, or a general or continuing condition indicating the dangerous condition's existence."[11] 130 S.W.3d at 765-66. Where a plaintiff introduces evidence to establish constructive notice in this manner, he is relieved from the burden of showing the duration of a particular occurrence of the dangerous

---

[11] For example, in a recent case, this court held that a hotel guest introduced sufficient evidence to support a finding of constructive notice based on a general or continuing condition in the defendant's hotel. *See Marden v. Gaylord Entm't Co.*, No. 3:07-CV-0209, 2008 U.S. Dist. LEXIS 48903 (M.D. Tenn. June 25, 2008), at *13-*14. In *Marden*, the hotel guest showed that a floor mat on which she tripped had been wrinkled repeatedly in the days prior to the accident. *Id.*

13

condition. *Id.* at 766.

In addressing what constitutes a general or continuing condition for the purposes of constructive notice, the Sixth Circuit explained that "the recurrence of a specific dangerous condition must be reasonably foreseeable to the owner." *See Tinsley v. Wal-Mart Stores, Inc.*, 155 Fed. Appx. 196, 198 (6th Cir. 2005). Generally, courts have required that the dangerous condition occur with regularity and predictability. *See e.g.*, *Beske v. Opryland USA, Inc.*, 923 S.W.2d 544, 546 (Tenn Ct. App. 1996) (noting that patrons spilled refreshments outside an amusement park's turnstile on a near daily basis, creating a general condition that established constructive notice); *Barrett v. Red Food Stores, Inc.*, No. 01-A-01-9108-CV-00302, 1992 Tenn. App. LEXIS 196, at *3-*4 (Tenn. Ct. App. Feb. 26, 1992) (noting that every time an ice cream delivery occurred, water accumulated on the floor in front of a grocer's freezer, creating a general condition that established constructive notice). Furthermore, "the specific location of the recurring dangerous condition or common occurrence is critical to determining constructive notice of that condition." *Tinsley*, 155 Fed. Appx. at 198.

In *Nolley v. Eichel*, No. M2006-00879-COA-R3-CV, 2007 Tenn. App. LEXIS 190 (Tenn. Ct. App. Apr. 2, 2007), a case involving a factual situation similar to that here, a bar patron cut herself on a broken beer bottle after slipping and falling and argued that the bar's policy of providing unlimited beer until 11 p.m. resulted in a pattern of bottles being dropped and broken on its floor, which, she claimed, provided the bar constructive notice of a continuing dangerous condition. However, the Court of Appeals affirmed a lower court's grant of summary judgment for the defendant because the evidence merely showed that the bar owner had observed broken bottles "multiple times" in the establishment's eight years of operation and not that

14

broken bottles occurred "on a regular basis or in a particularly troublesome location" sufficient to establish constructive notice based on a general or continuing condition. *Id.* at *12-*13 (quoting *Beard v. SCOA Indus., Inc.*, No. 88-358-II, 1989 Tenn. App. LEXIS 410, at *5 (Tenn. Ct. App. June 7, 1989) ("The mere possibility of occasional . . . spills is not enough to indicate that the defendant's method of operation created a hazardous condition.")).

Here, relying on Wade's testimony that she had cleaned up "quite a few" spills on Aisle Two in her four years of employment (Docket No. 20-8 at 19-20), the Comptons contend that Wal-Mart's knowledge of the frequency of spills on Aisle Two, combined with inadequate inspection policies, lack of inspection logs, and lack of video cameras in the frozen food section, indicate that Wal-Mart "was not diligent in meeting its duty to maintain its business premises in a safe condition." (Docket No. 21 at 10.) However, as *Nolley* suggests, a plaintiff must show that a *specific* dangerous condition occurs with sufficient frequency to be considered general or continuing. Despite Wade's testimony that there had been quite a few spills in Aisle Two during her four years of employment at Wal-Mart, there is no evidence in the record, as the Comptons acknowledge, to suggest that spills occurred any more frequently there than anywhere else in the store.[12] Therefore, regardless of Wal-Mart's policies, the Comptons have not produced evidence on which a reasonable jury could conclude that Wal-Mart had constructive notice based on a general or continuing condition.

Because the Comptons failed to introduce evidence that would establish the length of time that the broccoli and cheese was on the floor of Aisle Two or that would establish a general

---

[12]The Comptons "do not contend that items were spilled or dropped in [Aisle Two] on a sufficiently regular basis for that alone to have put [Wal-Mart] on constructive notice of the dangerous condition that caused Plaintiff's fall." (Docket No. 21 at 10.)

15

or continuing condition, no reasonable jury could conclude that Wal-Mart had constructive notice of the dangerous condition. Therefore, the Comptons have not met their burden with regard to the duty element.

## CONCLUSION

For the reasons discussed herein, the defendant's Motion for Summary Judgment will be granted.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge